Our next case is RFCyber Corp. v. Secretary of Commerce, 2024-16-14. Mr. Cowell. May it please the Court, Richard Cowell for Appellant RFCyber. The issue before the Court today is whether the Board erred in PTAB proceedings below in allowing Petitioner Apple to change its petition in its reply to point to a different structure as satisfying a claim element. In its petition, Apple pointed to the operating system of the Buho reference as satisfying the emulator device limitation. If there was an agreed-upon construction that Apple proposed, then an emulator device is a hardware device, alone or containing software, that pretends to be another device or program that other components expect to interact with. I have a question for you. On page A131, I think that's the petition, under the figure it says, a PCETA would have understood that Operating System 314 running on Processor 400 is an emulator device because it is a hardware device program that executes NFC applications. Why isn't that sufficient for the Board's conclusion here that the petition didn't just point to the Operating System 314, it was pointing to the Operating System 314 running on the Processor 400? There's a few reasons for that, Your Honor. First, that statement itself, I think, illustrates the issue here. The statement says the Operating System running on Processor is an emulator device because it is a hardware device or program that executes NFC applications. That or program broadens the agreed-upon construction beyond just hardware device. But it does say running on Processor 400 before that. It does say running on Processor 400. It does not – it never says that the processor, however, is the emulator device. It's the Operating System. That's what they point to. What standard of review do we apply to determine whether the Board erred in its reading of a petition? Whether the ground is new is de novo. Whether the Board erred in understanding the petition, I believe, is abuse of discretion. Would a skilled artisan know that operating software runs on a processor? Yes. The issue, however – so our cyber sought to dispel any confusion and, in fact, deposed the post-petitioner's expert and asked him flat out what was the emulator device. And he stated it was the operating system. And the question was, is there anything else? I'm not quoting exactly, but the question was essentially, is there anything else you're identifying as an emulator device? And he said no. Didn't he say, without reading my declaration in detail, I think that's what it is? He said something to that effect. He had the declaration in front of him. He was pointed to the exact paragraph which was being discussed. You can see that in Appendix 3092. And I don't think the expert's lack of familiarity with his own testimony renders his cross-examination testimony irrelevant. He should have known. It might not be irrelevant, but it's hard to say it's a full admission, maybe. I mean, or at least the Board could – the question would be whether the Board abused its discretion by reading it that way. I don't even recall if the Board relied on that deposition testimony. I believe the Director does in his brief. What about the next page in the appendix where he says an operating system, as I understand it, is a program that runs on a processor? That's non-indispute that an operating system runs on a processor. However, they didn't – again, Apple didn't point to the processor as the emulator device. They didn't explain how the processor was emulating anything. It's the – it was the operating system and, indeed, the operating system after it loaded certain applications they said was emulating. Did the expert in his declaration refer to both the software and the hardware, that is, the operating system running on the processor 400? I believe the expert said – I believe the expert parodied the exact statements from the petition. So it does say operating system running on processor. What about, I think, page 1647, paragraph 86? I think this is his declaration. Why isn't that identifying both of them? Because, again, the object of that sentence is the operating system. It's saying, okay, it's stored in this particular area. And, in fact, it doesn't even explain – What about the first sentence of paragraph 86? Right. It says – and there it doesn't even explain that – It doesn't even explain how the processor in that case is pretending to be another device. In fact, it says it facilitates the emulation functionality. Facilitates is a very broad statement. It just means helps or makes it possible. It's not actually performing that functionality. When the board allowed Apple to repair its petition on its reply, it puts our cyber into a bind, as any patent owner is in this case. The patent owner should be allowed to rely on what's in the petition to craft its arguments. When, on reply, Apple or any petitioner is able to change the structure to which it's pointing for for an element, suddenly, first of all, it's crafted its reply to avoid the arguments in the patent owner response. And then the patent owner is left only with the surreply to respond, which is usually under a much shorter deadline and is not, as a matter of the rules, allowed to include further evidence other than a deposition transcript of the expert. Well, intervene in response to that by saying that there's authority that allows the board to permit patent owners to submit expert declarations with their surreplies when a reply allegedly raises a new question. And they say Apple versus Bacina for that. And they say that you didn't seek leave to file a declaration. And not having done so, you can't now complain that you were denied that opportunity. How do you respond to that? I think, in that case, asking the board to suspend its own rules has to be considered an extraordinary relief. It's certainly not the ordinary course. And by requiring a patent owner to do that in every case, you're elevating what should be extraordinary relief to the ordinary course of business. And it does not deal with the fact that the time limit is now severely shorter. In this case, it was down to 14 days. And it does not also address the problem with the lack of crystallization of petitioner's theory in its petition. In other words, petitioner can still, even if we're allowed to put in a declaration later, petitioner can still shift its arguments to avoid the patent owner response, leaving the patent owner to try to address it in the first place in the surreply under a shortened timeline. So are you saying that if you are genuinely surprised by what is said in the reply, that there really is no procedural safeguard for you? I don't believe there's an effective procedural safeguard. I think that's a problem at an issue of this, is that by being vague in its petition, the petitioner is allowed then to subtly shift its arguments over to avoid the patent owner response, in this case by identifying a new structure to meet a claim limitation. And just to be clear, that new structure, as you call it, is Processor 400? Correct. With the operating system 314? Correct. The Court has no other questions. We will save you a little time. Yes, sir. Thank you, Your Honor. Mr. Amin.  Good morning, Your Honors, and may it please the Court. In our view, the petition clearly identified Operating System 314 running on Processor 400 at Appendix 131 as being the emulator device. RF-Cyber acknowledged as much in its preliminary response when it quoted that contention as characterizing what Apple was contending was the emulator device. And the Board's final written decision directly tracks that contention in describing its finding as to the emulator device. So we see no basis in this record to contend unfair surprise, nor any reason to think that there was any sort of procedural error in terms of how the Board resolved the emulator device limitation. Unless the Court has any further questions for me, we would ask that the Court confirm. I'm happy to cede the rest of my time. No one ever loses points by giving up time. Thank you, Your Honor. We will rely on your briefs. Mr. Cowell. To address the one point that counsel made, the POPR, which he's speaking of, there's no discussion saying, where RF-Cyber is saying, ah, they're saying the processor is the emulator device. Here's why the processor can't meet that. What it is is a block quote of the petition. Nobody's denying that the language operating system running on processor 400 is in the petition. But the POPR addresses the petition, quotes it, and then presents a different argument not based on whether it's a hardware device or not. So I don't think the POPR is relevant to any issue before this Court. That being the only argument, if the Court doesn't have anything, I would ask that the Court reverse, as there's no dispute that an operating system alone cannot meet this limitation. Thank you to both counsel. The case is submitted.